OPINION
Chester D. Flavell and Tonya Flavell, Appellants, bring this appeal from a judgment rendered in the Union County Court of Common Pleas. The Flavells argue that certain findings of the trial court are against the manifest weight of the evidence. For the reasons that follow, we affirm in part and reverse in part the judgment of the trial court.
The facts that are relevant to the issues raised on appeal are as follows. Appellee, Linda Flavell Pruett, is the mother of Appellant, Chester D. Flavell, who is married to Appellant, Tonya Flavell.
In 1997, the Flavells built a house located at 12610 Boundary Road, Richwood, Ohio. During December of 1997, the parties entered into an oral agreement whereby an interest in the property would be transferred to Mrs. Pruett. Though Mrs. Pruett took immediate possession, no deeds were ever transferred between the parties, and conflicting testimony was submitted as to nature of the interest to be conveyed pursuant to the agreement.
The Flavells claimed that Mrs. Pruett agreed to pay them $162,000.00 and transfer certain adjacent parcels or real estate to them within ninety days in return for a life estate in the Boundary Road property. The Flavells also testified that Mrs. Pruett was to pay the real estate taxes, repair the property, and maintain insurance on the property throughout her occupancy. Conversely, Mrs. Pruett testified that she expected to receive a deed granting a fee simple estate and was not obligated to transfer the funds or parcels until she had sold her own home.
Believing that the terms of the agreement had been breached, Chester Flavell served Mrs. Pruett with a thirty-day notice to quit the premises on June 10, 2000. Thereafter, on July 15, 2000, the Flavells served Mrs. Pruett with a three-day notice to vacate the residence after she failed to vacate the premises.
On August 31, 2000, Mrs. Pruett initiated the underlying action against the Flavells seeking an order requiring specific performance of the oral sale contract. In the event that the trial court determined that there was no meeting of the minds, and thus no contract, both parties sought recovery for various damages and unjust enrichment. Pruett requested the return of monies paid and restitution for the value of expenditures and improvements associated with the property. The Flavells sought recovery for damages to the property and various other expenses incurred as a result of Pruett's occupancy.
The trial court held that there was no meeting of the minds or mutual assent as to the material terms of the proposed agreement. Finding that the proposed contract had failed, the trial court attempted to return the parties to their respective pre-contract positions by compensating them for the benefits they had received from and conveyed upon each other.
The trial court awarded the Flavells the fair market rental value of Mrs. Pruett's occupancy and for damages to the residence. Mrs. Pruett was awarded the amounts paid toward the transfer, the amount of her expenditures on improvements to the property, premiums paid for a hazard insurance policy she maintained on the property through State Farm Insurance, and property taxes paid. These awards were offset to reach a final judgment amount. From this decision this appeal followed.
Appellants present the following two assignments of error.
 Assignment of Error Number One. The Trial Court's finding that the fair rental value of the property is $1,000.00 per month is against the manifest weight of the evidence.
In their first assignment of error, the Flavells claim that the trial court's determination of the fair rental value of the home was against the manifest weight of the evidence. In reviewing a weight-of-evidence claim, a judgment supported by some competent, credible evidence will not be reversed by a reviewing court as against the manifest weight of the evidence.[1] We defer to the findings of the trial court since it is in the best position to observe the witnesses and weigh their credibility.[2] Further, a difference of opinion on the credibility of witnesses and the evidence is not grounds for reversal.[3]
Having determined there was no meeting of the minds or mutual assent as to the material terms of the proposed agreement, the trial court set about returning the parties to their respective pre-contract positions. To achieve this goal, the trial court treated Pruett's possession of the property as a constructive tenancy and awarded the Flavells the fair market rental value of the tenancy. Admittedly, the only evidence submitted to the trial court regarding the value of this benefit was the parties' opinions as to the fair market rental value of the property.
Chester Flavell testified that, considering the value of the home, monthly mortgage payment, property tax, homeowner's insurance, and reserve costs to maintain the property, he believed the market rental value to be approximately $1,800.00 per month. However, Mr. Flavell also admitted:
 Obviously, the home is not a property that would be purchased by a typical investor for a home, simply because the, I guess the number of renters looking to pay a rental value towards a home with that sort of value would be minimal * * *.
Pruett echoed this sentiment, stating that, in her opinion, the reasonable rental value would be $1000.00 per month and that, "[f]or anything in that area [she did not] think he would be getting more than that."
The Flavells assert that there was no evidence or factual predicate offered to support Pruett's opinion as to the fair market rental value. However, in Smith v. Padgett,[4] the Ohio Supreme Court stated that, "[a] lessee of real property is competent to give opinion testimony as to the rental value of the leased premises." The Padgett court indicated that the foundation for admission of the tenant's opinion is that the tenant is assumed to possess sufficient acquaintance with the real property to estimate the value of the property.[5] In the instant case, Pruett resided in the home for more than three years. Moreover, the weight to be accorded to such testimony is, of course, a matter to be determined by the trier of fact.[6] There is no logical basis for distinguishing between the owners of actual leasehold estates and constructive leasehold estates. Therefore, we find that as a constructive tenant, Pruett was sufficiently acquainted with and competent to testify as to the fair market rental value of the property.
No general rule mandates that rental value must meet or exceed mortgage payments and other expenses associated with the purchase or ownership of property. Admittedly, regardless of what has been invested in a property, the property will rent only for what the market will bear. Because rental value is determined by and dependent upon several market factors, it may fall below or exceed the cost of building or purchasing the subject property. Moreover, there is no evidence that the trial court, as the trier of fact, did not consider Flavell's testimony. Rather, the record indicates that the trial court weighed the evidence and the credibility of the testimony presented and found $1,000.00 to be an appropriate rental value for the residence. Therefore, we find that trial court's determination was supported by sufficient competent and credible evidence.
Accordingly, Appellants' first assignment of error is overruled.
 Assignment of Error Number Two The Trial Court's finding that Appellants have been enriched by Appellee in the amount of $5,681.21 for improvements to the premises, $1,488.00 for hazard insurance, and $2,976.53 in real estate taxes is against the manifest weight of the evidence.
Generally, unjust enrichment is a quasi-contractual theory that operates in the absence of an express contract or a contract implied in fact when a party retains money or benefits that in justice and equity belong to another.[7] In Hambleton v. R.G. Barry Corp.,[8] the Ohio Supreme Court enumerated three criteria for recovery under the theory of quasi-contract: (1) a benefit conferred by a plaintiff upon a defendant; (2) knowledge by the defendant of the benefit; and (3) retention of the benefit by the defendant under circumstances where it would be unjust to do so without payment. It is not the defendant's burden to disprove an inequitable benefit resulting from the plaintiff's actions; the plaintiff must ordinarily show, not only loss on one side, but also gain on the other, with a tie of causation between them.[9] Mere testimony of expenditures establishes only that there has been a loss on one side and provides no evidence of a causal link between the improvements and an enhancement in the value of the property benefiting the other side.[10]
Restitution is the common-law remedy designed to address and prevent unjust enrichment.[11] The Restatement of the Law, Restitution,[12]
outlines the general rules for the measure of recovery in a restitution action:
 Actions for restitution have for their primary purpose taking from the defendant and restoring to the plaintiff something to which the plaintiff is entitled, or if this is not done, causing the defendant to pay the plaintiff an amount which will restore the plaintiff to the position in which he was before the defendant received the benefit. If the value of what was received and what was lost were always equal, there would be no substantial problem as to the amount of recovery, since actions of restitution are not punitive. In fact, however, the plaintiff frequently has lost more than the defendant has gained, and sometimes the defendant has gained more than the plaintiff has lost.
 In such cases the measure of restitution is determined with reference to the tortiousness of the defendant's conduct or the negligence or other fault of one or both of the parties in creating the situation giving rise to the right to restitution. If the defendant was tortious in his acquisition of the benefit he is required to pay for what the other has lost although that is more than the recipient benefited. If he was consciously tortious in acquiring the benefit, he is also deprived of any profit derived from his subsequent dealing with it. If he was no more at fault than the claimant, he is not required to pay for losses in excess of benefit received by him and he is permitted to retain gains which result from his dealing with the property.
In determining the amount of restitution, the trial court may consider the extent to which the enriched party's property has been increased in value.[13]
Because the trial court made no delineation of the measure of fault between the Flavells and Pruett, the parties are not required to pay for losses in excess of the value of benefits they received.
In its distribution, the trial court awarded Pruett $2,976.53 for real estate taxes she paid during the course of her occupancy. Though the Flavells knew Pruett was paying these taxes, they assert that no benefit was bestowed upon them. The Flavells further argue that it is inequitable to require them to reimburse Pruett for property taxes paid when the court-determined rental value was insufficient to satisfy the mortgage, aforementioned taxes, and other expenses associated with the property.
As previously stated herein, there is no general rule that fair market rental value must satisfy expenses associated with a property. Implicit in the trial court's rental value determination and overall distribution is the conclusion that the market would not allow the Flavells to recoup their expenses or receive any amounts in addition to the $1,000.00 rental value. Any amounts paid in excess of the rental value were therefore an additional benefit unjustly retained by the Flavells at Pruett's loss. Consequently, the payment of the property taxes was a benefit received and unjustly retained by the Flavells. Therefore, we find that there was sufficient competent and credible evidence for a rational trier of fact to find that the Flavells were benefited in the amount of property taxes paid.
Pruett was also awarded $1,488.00 for premiums paid for the hazard insurance policy she maintained on the property. Pruett testified that she maintained the State Farm Insurance policy through April 1, 2001. The Flavells assert that there is no evidence that they received a benefit from this insurance. However, Chester Flavell testified that Pruett was to maintain insurance on the property as a part of the agreement and indicated that he did not start paying for insurance on the property until June of 2000. Moreover, as owners of the property the Flavells benefited from the protections afforded by the subject policy. Based upon the foregoing, we find that there was sufficient competent and credible evidence that the Flavells benefited from and were unjustly enriched by the aforementioned insurance policy.
Pruett requested restitution for the amount of expenditures she incurred improving the property. Appellants asserted that the improvements took no role in the agreement and were "just something [Pruett] wanted in the home." Testimony at trial indicated that over the course of thirty-eight months Pruett purchased and installed the following: a security system, eighty-one shrubs and plants, topsoil, grass seed, closet rods, pantry shelves, curtain rods, a water softener, garage door openers, a gas log system for the fireplace, latticework deck improvements, and a satellite and cable antenna. The trial court found that Pruett paid $5,681.21 for the improvements and awarded her the same.
The Flavells do not challenge the determination of the amounts paid; instead, they contend that Pruett failed to satisfy her burden of proving that they received a benefit as a result of her expenditures. Our review of the record reveals no evidence of how the value of the property was enhanced or the manner in which the Flavells benefited from receipt of the improvements. Pruett testified only as to the amount of her expenditures. Moreover, evidence as to the value of the property indicated only a general appreciation during Pruett's occupancy. Testimony of the expenditures and evidence of general appreciation over time established only that Pruett had sustained a loss, but provided no causal link between the improvements and a direct enhancement in the value of the property benefiting the Flavells. Therefore, we find that the trial court erred in awarding Pruett the improvement expenditures.
Accordingly, Appellant's second assignment or error is sustained in part and overruled in part.
Having found error prejudicial to the Appellants herein, in the particulars assigned and argued, the judgment of the trial court is hereby reversed insofar as it relates to the restitution award for the property improvements.
Judgment affirmed in part, reversed in part and cause remanded.
HADLEY and SHAW, JJ., concur.
[1] C.E. Morris Co. v. Foley Constr. Co. (1978), 54 Ohio St.2d 279, at syllabus.
[2] Seasons Coal Co., Inc. v. Cleveland (1984), 10 Ohio St.3d 77,80.
[3] Id.
[4] Smith v. Padgett (1987), 32 Ohio St.3d 344, at syllabus.
[5] Id. at 347.
[6] Id. at 348.
[7] Daup v. Tower Cellular, Inc. (2000), 136 Ohio App.3d 555,569.
[8] Hambleton v. R.G. Barry Corp. (1984), 12 Ohio St.3d 179, 183.
[9] Fairfield Ready Mix v. Walnut Hills Associates, Ltd. (1988),60 Ohio App.3d 1, at syllabus.
[10] Forcier v. Spevak (Feb. 21, 1996), Summit App. No. 17268, unreported.
[11] Keco Industries, Inc. v. Cincinnati Suburban Bell Telephone Co. (1957), 166 Ohio St. 254, 256.
[12] Restatement of the Law, Restitution (1937) 595-596, Introductory Note to Section 150 et seq. (emphasis added).
[13] Restatement of the Law, Restitution (1937) 167, Improvements Upon Land or Chattels, Section 42(3).